Sealed
Public and unofficial staff access to this instrument are prohibited by court order

United States Courts
Southern District of Texas
FILED

*June 16, 2020*

David J. Bradley, Clerk of Court

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| v. | § | **CRIMINAL NO.** |
| | § | **4:20-cr-245** |
| **OSONDU VICTOR IGWILO,** | § | 18 U.S.C. § 1349 |
| **LAURA CHINWA NDIFE,** | § | 18 U.S.C. § 1343 |
| **TIMOTHY ADEDOYIN ADEROUNMU,** | § | 18 U.S.C. § 1028A(a)(1) |
| **STEVE NATHANIEL,** | § | 18 U.S.C. § 1956(h) |
| **UGOCHUKWU ANTHONY CHUKWURA** | § | 18 U.S.C. § 1956(a)(1)(B)(i) |
| **ABUNYIE,** | § | |
| **ANDREW CHIDIEBERE IBE,** | § | **UNDER SEAL** |
| **IKECHUKWU NNAMDI ADUAKA,** and | § | |
| **STEPHEN UGOCHUKWU NWOKOYE** | § | |
| | § | |
| Defendants. | § | |

**INDICTMENT**

**THE GRAND JURY CHARGES:**

**General Allegations**

1.      As described in this Indictment, an "advance-fee scheme" was a type of fraudulent scheme where victims were induced to pay certain fees on the false belief that payment must first be made to receive a promised good or service, when in reality the good or service was never going to be, and never was in fact, provided.

2.      As described in this Indictment, an "investment scam" was a type of advance-fee scheme where the defendants and other co-conspirators impersonated various U.S. financial institutions and posed as those institutions' representatives at in-person meetings, over the phone,

and over the Internet to fraudulently offer investment funding to U.S. and foreign residents in exchange for paying certain advance fees.

3.     As described in this Indictment, an "inheritance scam" was a type of advance-fee scheme where the defendants and other co-conspirators impersonated various U.S. financial institutions and posed as those institutions' representatives at in-person meetings, over the phone, and over the Internet to fraudulently offer to facilitate the transfer of a supposed inheritance to U.S. and foreign residents in exchange for paying certain advance fees.

4.     The U.S. financial institution in whose name the defendants and co-conspirators primarily perpetrated the investment and inheritance scams was BB&T Corporation ("BB&T"), a financial institution headquartered in Winston-Salem, North Carolina.  The actual agents and employees of BB&T did not participate in the scams.

5.     BB&T Executive #1 was a real executive with BB&T whose identity was stolen and used in furtherance of the investment scam, in that defendants and co-conspirators sent emails and made phone calls to victims under the pretense that they were actually BB&T Executive #1.

6.     Both the investment scam and the inheritance scam involved the fabrication of U.S. government seals and documents and the online impersonation of real U.S. government officials to make the victims believe that various branches of the U.S. government were guaranteeing or facilitating the supposed investment or inheritance.

**Roles in the Operation**

7.     The defendants and co-conspirators played the following roles in furtherance of the conspiracy:

a.      Consultants and Catchers: "Consultants" and "catchers" operated various online personas to lure victims into the scheme and convince victims that the supposed investment or inheritance was authentic.  The catcher was typically the one to have initial contact with the victim through phishing emails, while the consultant was typically the one to introduce BB&T as the entity that would supposedly provide funds.

b.      Representatives: "Representatives" posed as agents or employees of financial institutions at in-person meetings with the victims.  When visiting victims in foreign countries, representatives signed the supposed investment agreements and made sham visits to the local U.S. embassy or consulate to make the victim believe that the U.S. government, in exchange for cash payments, was sponsoring or guaranteeing the investment agreement.  In reality, the representatives kept the cash payments for themselves.

c.      Money Movers: "Money movers" received victims' funds by MoneyGram or wire transfers into U.S. bank accounts they had opened and controlled.  The money movers, at co-conspirators' directions, would quickly dispose of victims' funds upon their receipt by various means, including but not limited to: (1) withdrawing the funds in cash; (2) wiring the funds to other money movers; (3) wiring the funds to exporters, who were under instructions to purchase various goods and ship them to co-conspirators in Nigeria; and (4) using the funds to purchase vehicles and then shipping them to co-conspirators in Nigeria.

d.      Chairman: The "chairman" was the leader and organizer of the investment and inheritance scams perpetrated as part of the overarching scheme.  He controlled and directed catchers, consultants, representatives, and money movers.  He oversaw the recruitment of representatives and gave instruction to consultants and catchers on how to interact with victims in furtherance of the scam.  Using telephone, online instant messaging, and email, the chairman

served as the link between the money movers and consultants to ensure that there were U.S. bank accounts available to receive wire transfers from the victims whom the consultants and catchers had convinced to make payments.  The chairman also instructed money movers on how to dispose of the funds wired into the U.S. bank accounts.

### The Defendants and Co-Conspirators

8.     Defendant OSONDU VICTOR IGWILO, a resident of Lagos, Nigeria, was the chairman of the scheme.  He was often referred to by the consultants and catchers who worked for him as "Ezego," which means "King of Money" in Igbo.

9.     Defendant LAURA CHINWA NDIFE, a resident of Abuja, Nigeria, was a relative of IGWILO and assisted him in executing the scheme.  At times, she posed as BB&T Executive #1 and wrote communications in the name of BB&T Executive #1.  She also traveled to the United States in 2016 to launder proceeds of the scheme.

10.     Defendant TIMOTHY ADEDOYIN ADEROUNMU, a resident of Lagos, Nigeria, served as IGWILO's assistant in executing the scheme and operated various online personas in furtherance of the scheme.

11.     Defendant STEVE NATHANIEL, a resident of Nigeria, was a consultant in the scheme.  NATHANIEL operated under the fake persona "Browne Harrison," among others.

12.     Defendant UGOCHUKWU ANTHONY CHUKWURA ABUNYIE, a resident of Nigeria, was a consultant in the scheme.  ABUNYIE operated under the fake persona "Thomas Kohler," among others.

13.     Defendant ANDREW CHIDIEBERE IBE, a resident of Nigeria, was a consultant in the scheme.  IBE operated under the fake persona "Brian Anderson."

14.     Defendant IKECHUKWU NNAMDI ADUAKA, a resident of Nigeria, was a consultant in the scheme.  ADUAKA operated under the fake persona "Arthur Andersen."

15.     Defendant STEPHEN UGOCHUKWU NWOKOYE, a resident of Nigeria, was a consultant in the scheme.  NWOKOYE operated under the fake persona "Paul Barnett."

16.     Co-conspirator Uju Okigbo, a resident of Richmond, Texas, was a money mover in the scheme.  Okigbo owned and controlled U-4CS Services, LLC, a company that purported to offer export services.  Okigbo opened bank accounts in the name of U-4CS Services that she used to receive and launder proceeds of the scheme.

### Purpose of the Conspiracy and Scheme to Defraud

17.     It was a purpose of the conspiracy and scheme to defraud that the co-conspirators would (a) unlawfully enrich themselves in an amount that exceeded $7 million by deceiving victims into making payments to co-conspirators as part of purported investment and money transfer agreements with U.S. financial institutions, and (b) conceal their involvement in the scheme.

### Manner and Means of the Conspiracy and Scheme to Defraud

18.     The manner and means by which the co-conspirators sought to accomplish the object and purposes of the conspiracy and the scheme to defraud included, among other things, the following:

a.     Catchers and consultants sent phishing emails to potential victims in over 20 countries around the world in the names of bogus or stolen personas—either investment consultants, advisers, or bankers—in which the catcher or consultant falsely promised the potential victims that an investment sum or inheritance, usually in the amount of tens of millions of U.S. dollars or euros, was available.

b.      If a victim was interested in obtaining the funds, the consultant typically introduced him or her to additional fake online personas, such as those controlled by IGWILO and ADEROUNMU, who often used authentic-looking email addresses paired with falsely registered domain names to pose as employees of BB&T.

c.      Under IGWILO and ADEROUNMU's direction, fake online personas, including those controlled by catchers and consultants, informed victims that a BB&T representative would visit them where they lived to officially sign and ratify an agreement, when in truth and in fact the representative traveling to meet them had no employment relationship with BB&T.

d.      NDIFE and other co-conspirators posed as financial institution employees, including BB&T Executive #1, on phone calls with the potential victims using spoofed phone numbers that made it appear the calls were originating from North Carolina, where BB&T was headquartered.

e.      Under IGWILO and ADEROUNMU's direction, fake online personas, including those controlled by catchers and consultants, convinced victims to purchase first-class airline tickets and pay for business hotel accommodations for the representatives to travel from the United States to their country or their city in the United States by misrepresenting that such expenditures were required by the agreement with the financial institution.

f.      Under IGWILO and ADEROUNMU's direction, fake online personas, including those controlled by catchers and consultants, convinced victims that the U.S. government was sponsoring the investment or inheritance and that, as evidence of this sponsorship, the U.S. embassy would supposedly notarize and ratify the investment agreement,

6

when in truth and in fact neither the U.S. government nor any U.S. embassy or consulate was sponsoring the investment opportunity with the financial institution.

g.    Under IGWILO and ADEROUNMU's direction, fake online personas, including those controlled by catchers and consultants, convinced victims that the U.S. embassy or consulate charged a notarization fee, due in cash to the representatives, ranging from approximately $5,000 to $10,000, when in truth and in fact no U.S. embassy or consulate charged such a fee.

h.    After receiving the cash, the representatives entered U.S. embassies or consulates and waited inside on the false pretense that U.S. government employees were notarizing the agreement in exchange for the fees, and then gave or emailed the victims fraudulent receipts that purported to be issued, and fraudulent agreements that purported to be notarized, by the U.S. embassies or consulates.

i.    After the representatives visited the embassies, under IGWILO and ADEROUNMU's direction, fake online personas, including those controlled by catchers and consultants, made additional requests of victims that they pay various up-front fees before the investment funding could be released, which caused victims to make MoneyGram payments and interstate and international wire transfer payments to bank accounts under the control of money movers in, among other places, the Southern District of Texas.

j.    Under IGWILO and ADEROUNMU's direction, fake online personas, including those controlled by catchers and consultants, continued to fabricate additional reasons why more payments were needed before the investment funding could supposedly be released, until a victim gave up and stopped communicating.

7

k.      Upon instructions from IGWILO and ADEROUNMU, money movers, including NDIFE, disbursed victims' funds upon receiving them, including by withdrawing victims' funds, wiring them to other bank accounts, and purchasing, among other things, cars, which would then be shipped to IGWILO in Nigeria.

l.      The money movers continued to open new bank accounts in the United States, even when banks would flag and close the accounts due to suspicious transactions, to ensure that co-conspirators would be able to continue convincing victims that wiring money to a U.S.-based bank was part of a legitimate investment or money transfer agreement.

### Scope of the Conspiracy and Scheme to Defraud

19.     The defendants and their co-conspirators perpetrated investment and inheritance scams as part of a scheme to defraud victims in over 20 countries, including the United States, of more than $7 million.

### COUNT ONE
Conspiracy to Commit Wire Fraud
(18 U.S.C. § 1349)

20.     The Grand Jury re-alleges and incorporates by reference, as though fully set forth herein paragraphs 1 through 19 of the Indictment.

21.     Starting no later than in or around October 2014 and continuing through in or about December 18, 2018, in the Houston Division of the Southern District of Texas, and elsewhere, defendants

**OSONDU VICTOR IGWILO,**
**LAURA CHINWA NDIFE**,
**TIMOTHY ADEDOYIN ADEROUNMU,**
**STEVE NATHANIEL,**
**UGOCHUKWU ANTHONY CHUKWURA ABUNYIE,**
**ANDREW CHIDIEBERE IBE,**
**IKECHUKWU NNAMDI ADUAKA,** and
**STEPHEN UGOCHUKWU NWOKOYE**

8

did knowingly and willfully combine, conspire, confederate, and agree with others known and unknown to the grand jury to commit wire fraud, in violation of Title 18, United States Code, Section 1343, that is, having knowingly, and with the intent to defraud, devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme, did knowingly transmit and cause to be transmitted by means of wire in interstate commerce, writings, signs, signals, pictures and sounds.

### Purpose of the Conspiracy

22. The allegations contained in paragraph 17 are realleged and incorporated by reference as a description of the Purpose of the Conspiracy.

### Manner and Means of the Conspiracy

23. The allegations contained in paragraph 18, including all subparagraphs, are realleged and incorporated by reference as a description of the Manner and Means of the Conspiracy.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS TWO THROUGH SEVEN
Wire Fraud
(18 U.S.C. § 1343)

24.     The Grand Jury re-alleges and incorporates by reference, as though fully set forth herein, paragraphs 1 through 19 of the Indictment.

25.     Starting no later than in or around October 2014, and continuing through in or about December 18, 2018, defendants

**OSONDU VICTOR IGWILO**,
**LAURA CHINWA NDIFE**,
**TIMOTHY ADEDOYIN ADEROUNMU,**
**STEVE NATHANIEL,**
**UGOCHUKWU ANTHONY CHUKWURA ABUNYIE,**
**ANDREW CHIDIEBERE IBE,** and
**STEPHEN UGOCHUKWU NWOKOYE**

aided and abetted by others known and unknown to the Grand Jury, did knowingly, willfully, and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing such pretenses, representations, and promises were false and fraudulent when made, transmit and cause to be transmitted, by means of wire communications in interstate commerce, writings, signals, pictures, and sounds, for the purpose of executing such scheme and artifice.

### Purpose of the Scheme and Artifice

26.     The allegations contained in paragraph 17 are realleged and incorporated by reference as a description of the Purpose of the Scheme and Artifice.

## Manner and Means of the Scheme and Artifice

27.     The allegations contained in paragraph 18, including all subparagraphs, are realleged and incorporated by reference as a description of the Manner and Means of the Scheme and Artifice.

## Use of Wires

28.     On or about the dates specified as to each count below, the defendants herein, in the Southern District of Texas and elsewhere, for the purpose of executing the aforesaid scheme and artifice to defraud, and attempting to do so, did knowingly transmit and cause to be transmitted, by means of wire, radio, and television communication, writings, signals, pictures, and sounds in interstate and foreign commerce, as set forth below:

| COUNT | DEFENDANTS | DATE | WIRE |
|---|---|---|---|
| TWO | OSONDU VICTOR IGWILO, LAURA CHINWA NDIFE, TIMOTHY ADEDOYIN ADEROUNMU, ANDREW CHIDIEBERE IBE | June 25, 2015 | Wire transfer in the amount of $49,988 from China to BB&T bank account ending in 3778 in the name U-4CS Services in the Southern District of Texas |
| THREE | OSONDU VICTOR IGWILO, LAURA CHINWA NDIFE, TIMOTHY ADEDOYIN ADEROUNMU, STEPHEN UGOCHUKWU NWOKOYE | July 3, 2015 | Wire transfer in the amount of $75,000 from Indonesia to BB&T bank account ending in 3778 in the name of U-4CS Services in the Southern District of Texas |
| FOUR | OSONDU VICTOR IGWILO, LAURA CHINWA NDIFE, TIMOTHY ADEDOYIN ADEROUNMU, UGOCHUKWU ANTHONY CHUKWURA ABUNYIE | September 25, 2015 | Wire transfer in the amount of $12,470 from Denmark to BB&T bank account ending in 3778 in the name U-4CS Services in the Southern District of Texas |

11

| COUNT | DEFENDANTS | DATE | WIRE |
|---|---|---|---|
| FIVE | OSONDU VICTOR IGWILO, LAURA CHINWA NDIFE, TIMOTHY ADEDOYIN ADEROUNMU, STEVE NATHANIEL | March 30, 2016 | Wire transfer in the amount of $50,000 from South Korea to BB&T bank account ending in 8992 in the name of U-4CS Services in the Southern District of Texas |
| SIX | OSONDU VICTOR IGWILO, LAURA CHINWA NDIFE, TIMOTHY ADEDOYIN ADEROUNMU | August 29, 2016 | Wire transfer in the amount of $70,000 from Colorado to Bank of America account ending in 7028 in the name of U-4CS Services in the Southern District of Texas |
| SEVEN | OSONDU VICTOR IGWILO, LAURA CHINWA NDIFE, TIMOTHY ADEDOYIN ADEROUNMU | September 15, 2016 | Wire transfer in the amount of $200,015 from Colorado to Bank of America account ending in 7028 in the name of U-4CS Services in the Southern District of Texas |

All in violation of Title 18, United States Code, Section 1343.

12

## COUNT EIGHT
Aggravated Identity Theft
(18 U.S.C. §§ 1028A(a)(1) and 2)

29.     The Grand Jury re-alleges and incorporated by reference, as though fully set forth herein, paragraphs 1 through 19 of the Indictment.

30.     On or about September 14, 2016, in the Houston Division of the Southern District of Texas, and elsewhere, defendants

**OSONDU VICTOR IGWILO,**
**LAURA CHINWA NDIFE,** and
**TIMOTHY ADEDOYIN ADEROUNMU,**

aiding and abetting each other, did knowingly use and caused to be used, and attempted to do so, without lawful authority a means of identification that the defendants knew belonged to another person, BB&T Executive #1, to wit: writing and sending an email in BB&T Executive #1's name to H.M., during and in relation to a violation of Title 18, United States Code, Section 1343, as set forth in Count Seven of the Indictment.

All in violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.

13

## COUNT NINE
Conspiracy to Launder Monetary Instruments
(18 U.S.C. § 1956(h))

31.     The Grand Jury re-alleges and incorporates by reference, as though fully set forth herein, paragraphs 1 through 19 of the Indictment.

32.     Beginning no later than in or around October 2014 and continuing through in or about December 18, 2018, in the Houston Division of the Southern District of Texas, and elsewhere, defendants

**OSONDU VICTOR IGWILO**,
**LAURA CHINWA NDIFE**, and
**TIMOTHY ADEDOYIN ADEROUNMU**

with others known and unknown to the Grand Jury, knowingly conspired, combined, and agreed to commit the following offenses in violation of Title 18, United States Code, Sections 1956, to wit:  to knowingly conduct and attempt to conduct financial transactions, affecting interstate and foreign commerce, involving the proceeds of a specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity constituting a felony under state and federal law, and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

### Purpose of the Conspiracy

33.     It was a purpose of the conspiracy that the co-conspirators would engage in financial transactions with proceeds of advance-fee schemes so that the defendants and co-conspirators could enrich themselves and ensure that perpetrators of the fraud in Nigeria could

receive criminal proceeds without detection or interference by victims, banking authorities, and law enforcement.

## Manner and Means of the Conspiracy

34.     The manner and means by which the defendants and co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

a.     Upon IGWILO's instructions, and with ADEROUNMU's assistance, money movers opened bank accounts into which victims of the investment and inheritance scams made payments believing the payments were mandatory to receive their funding.

b.     After receiving victims' funds, upon IGWILO's instruction, money movers normally took the following actions, among others not listed below: (1) wired the funds to participants in an underground U.S.-Dollar-Nigerian-Naira currency exchange who ensured IGWILO received the funds in the form of Naira in Nigeria; (2) wired the funds to exporters who received the proceeds in exchange for shipping goods to IGWILO in Nigeria; (3) withdrew the funds in cash, check, or card debits as personal payment for their laundering services; and (4) purchased vehicles that they then shipped to IGWILO in Nigeria.

c.     When victims of the scam attempted to recall a fraudulently induced wire transfer, the money movers typically rejected the recall and relied on co-conspirators to pacify the victims with more lies and misrepresentations.

d.     Money movers continued to open new bank accounts into which victims of the scam made payments even after other accounts used in the conspiracy were flagged for suspicious transactions and closed by the banks hosting the accounts.

All in violation of Title 18, United States Code, Section 1956(h).

15

**COUNTS TEN AND ELEVEN**
Concealment Money Laundering
(18 U.S.C. §§ 1956(a)(1)(B)(i) and 2)

35.    The Grand Jury re-alleges and incorporates by reference, as though fully set forth herein, paragraphs 1 through 19, 33, and 34 of the Indictment.

36.    On or about the following dates, in the Houston Division of the Southern District of Texas, and elsewhere, defendants

**OSONDU VICTOR IGWILO,**
**LAURA CHINWA NDIFE**, and
**TIMOTHY ADEROUNMU**

conducted, attempted to conduct, aided and abetted others to conduct, and willfully caused others to conduct the following financial transactions, affecting interstate and foreign commerce, that in fact involved the proceeds of a specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that (a) the property involved in the transactions represented the proceeds of some form of unlawful activity constituting a felony under state and federal law, and (b) the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of such specified unlawful activity:

| COUNT | DATE | FINANCIAL TRANSACTION |
|-------|------|----------------------|
| TEN | February 23, 2016 | Wire transfer in the amount of $4,000 from BB&T account ending in 8992 in the name of U-4CS Services in the Southern District of Texas to Capital One account in New York ending in 3933 in the name of NDIFE |
| ELEVEN | September 15, 2016 | Purchase of cashier's check made out to auto broker in the amount of $17,844 from Bank of America account ending in 7028 in the name of U-4CS Services in the Southern District of Texas |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

16

## NOTICE OF FORFEITURE
(18 U.S.C. § 981(a)(1)(C))

37.     Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28,

United States Code, Section 2461(c), the United States gives notice to defendants

**OSONDU VICTOR IGWILO,**
**LAURA CHINWA NDIFE,**
**TIMOTHY ADEDOYIN ADEROUNMU,**
**STEVE NATHANIEL,**
**UGOCHUKWU ANTHONY CHUKWURA ABUNYIE,**
**ANDREW CHIDIEBERE IBE,**
**IKECHUKWU NNAMDI ADUAKA,** and
**STEPHEN UGOCHUKWU NWOKOYE**

that in the event of conviction of any of the conspiracy and wire fraud offenses charged in

Counts One through Seven of this Indictment, all property, real or personal, which constitutes or

is derived from proceeds traceable to such offense, is subject to forfeiture.

## NOTICE OF FORFEITURE
(18 U.S.C. § 982(a)(1))

38.     Pursuant to Title 18, United States Code, Section 982(a)(1), the United States

gives notice to defendants,

**OSONDU VICTOR IGWILO**,
**LAURA CHINWA NDIFE**,
and
**TIMOTHY ADEDOYIN ADEROUNMU**

that in the event of conviction of any money laundering offense as charged in Counts Nine

though Eleven of this Indictment, all property, real or personal, involved in money laundering

offenses or traceable to such property, is subject to forfeiture.

### Money Judgment and Substitute Assets

39.     The United States may seek the imposition of a money judgment against each

defendant.  In the event that a condition listed in Title 21, United States Code, Section 853(p)

17

exists, the United States will seek to forfeit any other property of the defendants in substitution up to the total value of the property subject to forfeiture.

A TRUE BILL

Signature on file

_____
FOREPERSON OF THE GRAND JURY

RYAN K. PATRICK                              ROBERT A. ZINK
UNITED STATES ATTORNEY             CHIEF
                                                          Fraud Section, Criminal Division
                                                          U.S. Department of Justice

By:   *Suzanne Elmilady*               By:   *William Johnston*
Suzanne Elmilady                            William Johnston
Assistant United States Attorney      Assistant Chief
(713) 567-9000                                 Philip Trout
                                                          Trial Attorney
                                                          (202) 514-2000